IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**REBECCA LEDET**                                                                                      **PLAINTIFF**

**v.**                                                                    **CAUSE NO. 1:21-cv-107-LG-RPM**

**HUNTINGTON INGALLS
INCORPORATED; JENNI JONES,                                                       DEFENDANTS
INDIVIDUALLY; and JOHN
PATRONAS, INDIVIDUALLY**

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the [52] Motion for Summary Judgment filed by Defendants, Huntington Ingalls Incorporated, Jenni Jones, individually, and John Patronas, individually.  The Motion has been fully briefed by the parties.  After due consideration of the parties' submissions, the record in this matter, and the applicable law, the Court finds that the Motion should be granted in part. Plaintiff's Title VII claims shall be dismissed with prejudice.

### BACKGROUND

In this employment dispute, Plaintiff, Rebeca Ledet, alleges that her former employer, Defendant Huntington Ingalls Incorporated ("Ingalls") unlawfully retaliated against her in the terms and conditions of her employment.  She further alleges that Defendants Jenni Jones and John Patronas tortuously interfered with her employment at Ingalls.  The facts are set forth in detail below.

Plaintiff was originally hired by Huntington Ingalls as an insulator in 2017. (Dep. Rebecca Ledet, at 19-20, ECF No. 52-1).  In January 2019, she transferred to

the position of shipfitter in Ingalls's Hull Department. (Am. Compl. ¶ 9, ECF No. 13; Dep. Ledet, at 19-20, ECF No. 52-1). At an orientation for her new position, Plaintiff met her supervisor, Defendant Jenni Jones, and asked for a shift compatible with her life as a single mother. (*Id.* at 76-79). Jones empathized with her and explained that shift assignment is based on seniority. (Decl. Jones ¶ 4, ECF No. 52-3). She also explained to Plaintiff that all trainees are placed on the first shift (*Id.* ¶ 4), which Plaintiff considered to be an optimal shift for her childcaring schedule. (Pl.'s Aff. ¶¶ 8-10, ECF No. 55-1). Plaintiff began her shipfitter training, briefly served as a fire watch, and then finished training in July 2019. (Dep. Ledet, at 79-83, ECF No. 52-1; Decl. Jones ¶¶ 4-6, ECF No. 52-3).

During this time, Plaintiff reports that she began to receive unwanted sexual text messages from a co-worker, Gabe Churchwell,[1] between March and April 2019. (Dep. Ledet, at 121, ECF No. 52-1; Pl.'s Aff. ¶¶ 11-12, ECF No. 55-1). She narrates an incident in April or May 2019 wherein Churchwell handed Plaintiff his personal phone to speak to Jones on speaker during a training session. (*Id.* ¶ 13). Plaintiff alleges that Churchwell's phone received sexually explicit photographs of Jones during the phone call, which photographs were observed by Plaintiff, who was "offended by the content." (*Id.* ¶¶ 14-15).[2] Plaintiff repeats these allegations in her

---

[1] Plaintiff identifies this employee as "Gabe Churchill." Defendant Huntington Ingalls identifies this employee as Gabe Churchwell on the relevant documents. (*See* Investigation Report, ECF No. 52-10). The Court therefore presumes that "Gabe Churchwell" is correct.

[2] Apparently, a Welding Instructor named Mike Londy also observed the

2

deposition testimony and clarifies that she saw a single photograph. (*See* Dep. Ledet, at 126-27, ECF No. 52-2).

In early August 2019, a co-worker, Daniel Burke, reported that Plaintiff had been sexually harassed by a trainer. (*Id.* at 69-70). Plaintiff had previously mentioned her harassment to Burke, who "went behind [her] back and reported it." (*Id.* at 70). In the subsequent investigation, Plaintiff met both EEO Compliance Manager Carlos Moulds and Labor Relations representative Julius Patronas. (Decl. Moulds ¶¶ 2-3, ECF No. 52-9; Decl. Patronas ¶ 2, ECF No. 52-11). According to Plaintiff, Patronas assured her "that [she] would not be retaliated against for reporting information pertaining to the sexual harassment complaint." (Pl.'s Aff. ¶ 26, ECF No. 55-1). During the investigation, Moulds interviewed Jones regarding the allegation that Jones sent explicit photos to Churchwell. (Moulds Decl. ¶ 4, ECF No. 52-9). Jones denied sending any such pictures and volunteered her phone for a brief search, which revealed nothing.[3] (*Id.*).

After meeting with Churchwell and other employees, Moulds determined that Churchwell had sent inappropriate text messages to Plaintiff and recommended his termination. (*Id.* ¶ 3; Investigation Report, ECF No. 52-10). Ingalls terminated Churchwell's employment shortly thereafter. Plaintiff alleges that the whole incident became a source of contention between Plaintiff and her coworkers. (Pl.'s

---

photographs. (*See id.* ¶ 16).
[3] Moulds reports that Jones was not aware of the identity of the complainant or the reason for the interview. (*Id.*).

3

Aff. ¶¶ 30-31, ECF No. 55-1).

In July or August 2019, a more senior shipfitter on a different shift requested to be transferred to Plaintiff's shift. (Decl. Jones ¶¶ 6-7, ECF No. 52-3).[4] This request was approved in August 2019, and he then replaced Plaintiff, resulting in her transferal to what she considered a suboptimal shift. (Dep. Ledet, at 95-96, ECF No. 52-1; Decl. Jones ¶¶ 6-7, ECF No. 52-3). This shift involved outside work and was incompatible with her childcare schedule. (Pl.'s Aff. ¶¶ 32-33, ECF No. 55-1). Plaintiff suggests that, regardless of the seniority rules, Jones actively attempted to transfer Plaintiff to a suboptimal shift in retaliation for the sexual harassment investigation. (*Id.* ¶¶ 32-34).

Troubled, Plaintiff filed a grievance and requested a meeting with Jones. (*Id.* ¶ 35). Plaintiff alleges that Jones denied Plaintiff union representation in the meeting. (*Id.* ¶¶ 36-38). Jones remembers that she "was able to pause the transfer for a week so that [Plaintiff] could arrange for childcare" (Decl. Jones ¶ 6, ECF No. 52-3), while Plaintiff remembers that Jones recommended she use a week's vacation time for that purpose. (Pl.'s Aff. ¶¶ 39-42, ECF No. 55-1). Nevertheless, Plaintiff remained slated to begin work on the suboptimal shift. Jones reports that, after the meeting, Plaintiff "continued to refuse to transfer." (Decl. Jones ¶ 6, ECF No. 52-3).

However, instead of beginning work on the slated shift, Plaintiff accepted a

---

[4] Under Ingalls's procedures, a more senior employee may request to transfer into the position of an employee in the same craft with less seniority.

4

fire watch position on the first shift in a different department beginning in August 2019. (Dep. Ledet, at 96, ECF No. 52-1; Decl. Jones ¶ 7, ECF No. 52-3). Jones states that she was able to "loan" Plaintiff to this position, and this transfer would not have occurred but for her approval. (Decl. Jones ¶ 7, ECF No. 52-3). Plaintiff states that she was invited to do so and accepted. (Pl.'s Aff. ¶ 43, ECF No. 55-1). Plaintiff then returned to her original joiner/insulator position in September or October 2019. (Dep. Ledet, at 96, ECF No. 52-1; Decl. Jones ¶ 8, ECF No. 52-3; Pl.'s Aff. ¶ 45). Plaintiff held this position until July 2020, when she transferred back to Shipfitting instead of being laid off, which placed her under Jones's supervision and on her desired shift. (Decl. Jones ¶ 8, ECF No. 52-3; Pl.'s Aff. ¶ 46, ECF No. 55-1). After the transfer, Plaintiff reports that Jones was "very apologetic" about the sexual harassment incident and wanted to rectify the issues between them. (Pl.'s Aff. ¶ 48, ECF No. 55-1).

On July 27, 2020, Plaintiff submitted a medical excuse issued by an urgent care clinic to justify her absence from work on July 22, 2020. (Dep. Ledet, at 150, ECF No. 52-2; Excuse, ECF No. 52-14). Thereafter, a clerk who processes such excuses noted that Plaintiff's excuse appeared to be altered and emailed it to Plaintiff's Labor Relations representative, Patronas, as is her custom. (Decl. Roberts ¶¶ 3-4, ECF No. 52-13). Subsequently, Patronas corresponded with the clinic and discovered that Plaintiff had actually been seen June 28 and not on June 22. (Decl. Patronas ¶ 3, ECF No. 52-11). During the ensuing disciplinary meeting,

5

Plaintiff denied altering the excuse. (Decl. Patronas ¶ 4, ECF No. 52-11). In fact she "adamantly denied" the allegation. (Pl.'s Aff. ¶ 57, ECF No. 55-1). Afterwards, based on the altered excuse, the clinic's denial that she had been seen that day, and Plaintiff's apparent dishonesty, Patronas decided to terminate Plaintiff. (*Id.* ¶ 5; Dep. Ledet, at 158-59, 164, ECF No. 52-2; Pl.'s Aff. ¶ 58, ECF No. 55-1).

After her termination, Plaintiff filed a grievance, accompanied by a letter from a nurse at the clinic stating that she had been seen on July 22, but the record was delayed by COVID-19. (Letter, ECF No. 52-19; Decl. Patronas ¶ 7, ECF No. 52-11; Pl.'s Aff. ¶¶ 60-61, ECF No. 55-1). Patronas called the nurse, Shannon Whittington, who restated that Plaintiff had been seen on July 22, but confirmed that Plaintiff changed the dates on the excuse. (Dep. Shannon Whittington, at 11, ECF No. 55-2; Decl. Patronas ¶ 7, ECF No. 52-11). Whittington also told Patronas that she knew of the date change on the excuse, and that the new date was "correct." (Dep. Shannon Wittington, at 13-15, ECF No. 55-2). However, because Plaintiff had denied altering the excuse during the initial investigation, Patronas sustained Plaintiff's termination. (Decl. Patronas ¶¶ 7-9).

Plaintiff then filed the instant lawsuit on April 2, 2021. In her [13] Amended Complaint, she alleges that Defendant Huntington Ingalls retaliated against her in violation of Title VII and that the individual Defendants—Jenni Jones and John Patronas[5]—tortiously interfered with her employment in violation of state law.

---

[5] Plaintiff identifies this Defendant as "John Patronas," but Patronas identifies

6

(Am. Compl., ¶¶ 71-84, ECF No. 13). On February 8, 2022, Defendants filed the present [52] Motion for Summary Judgment, arguing that Plaintiff has neither established a *prima facie* case of retaliation nor rebutted the legitimate non-retaliatory ground for her termination. Defendants also contend that the tortious interference claim fails as a matter of law and that all claims are barred by judicial estoppel. Plaintiff [55] responded, and Defendants [58] replied. The Motion has been fully briefed and is now ripe for disposition by the Court.

## DISCUSSION

**I.    MOTION FOR SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

---

himself as "Julius Patronas" in his own Declaration. (*See* Decl. Patronas ¶ 1, ECF No. 52-11). Plaintiff has not moved to amend to correct this Defendant's name. Regardless, for purposes of identification, the Court will presume that Julius Patronas is the correct name.

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

## II. Plaintiff's Title VII Retaliation Claims

Defendant moves for summary judgment on Plaintiff's Title VII retaliation claim. To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she participated in an activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate . . . non-retaliatory reason for its employment action." *Aryain*, 534 F.3d at 484 (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)). "The employer's burden is only one of production, not persuasion, and involves no credibility

assessment." *McCoy*, 492 F.3d at 557.

If the employer satisfies this burden, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the actual retaliatory reason. *Id.* "The proper standard or proof . . . [for] a Title VII retaliation claim is that the adverse employment action . . . would not have occurred 'but for' [the] protected conduct." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 806 (5th Cir. 2007) (quoting *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005)).

> The close timing between plaintiff's protected activity and alleged retaliatory action may help establish the causal connection element of a prima facie retaliation claim . . . . However, summary judgment for defendant is proper when plaintiff presents "no evidence of retaliation save temporal proximity" to rebut defendant's proffered reason and overwhelming evidence that plaintiff was fired because of poor performance and improper work conduct.

*Dixon v. Comal Cnty. Tex.*, 447 F. App'x 638 (5th Cir. Nov. 1, 2011) (citing *Swanson v. Gen. Serv. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997); *Strong*, 482 F.3d at 808). The same analysis is utilized for retaliation claims asserted pursuant to Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007).

Defendants argue that Plaintiff fails the causation element of her *prima facie* case because almost a year lapsed between the sexual harassment investigation and her termination. (Def.'s Mem. Supp. Mot. Summ. J., at 10, ECF No. 53). Moreover, Defendants argue that Plaintiff has not established a retaliatory motive in either of the individual Defendants, who it contends were just doing their jobs. (*Id.* at 9-10).

9

Plaintiff responds that the length of time is irrelevant because Defendant Jones began attempting to transfer Plaintiff to a suboptimal shift within a month of her involvement in the sexual harassment claim. (Pl.'s Br. Supp. Resp. Def.'s Mot. Summ. J., at 8, ECF No. 56). Plaintiff does not respond to Defendants' other arguments concerning causation. (*Id.*). However, regardless of whether Plaintiff has established a *prima facie* case of Title VII retaliation, the Court finds that she cannot surmount Defendant's legitimate nondiscriminatory explanation for her termination—altering a medical absentee excuse and untruthful representation about those alterations thereafter.

"[I]f the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *McCoy*, 492 F.3d at 557. "To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). To establish pretext, the plaintiff may show disparate treatment or "that the employer's proffered explanation is false or 'unworthy of credence.'" *Id.* (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)). Even then, "[s]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire v. La. Dept. of Transp. Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) (citation omitted).

Here, Plaintiff attempts to establish pretext through the testimony of Nurse Practitioner Whittington. She states: "Plaintiff can also show pretext as Ms. Whittington has confirmed that she approved Plaintiff changing the medical excuse, and that it was not fraudulently changed by Plaintiff." (Pl.'s Br. Supp. Resp. Def.'s Mot. Summ. J., at 8, ECF No. 56). She cites the deposition testimony of Nurse Practitioner Shannon Whittington, who allegedly approved the date change by Plaintiff. (Dep. Whittington, at 15, ECF No. 55-2).[6]

The Court finds that Plaintiff has failed to create a genuine factual issue as to Defendant's legitimate nondiscriminatory reason for her termination. Defendant's proffered rationale for terminating Plaintiff is not that she was absent from work, nor that she merely manipulated the medical excuse, but also that she was dishonest during the ensuing investigation. Plaintiff agreed that she would expect an employee to be terminated for falsifying a medical excuse. (Dep. Ledet, at 161, ECF No. 52-3). She also agreed that the excuse appears to be "messed up," which, combined with the clinic's attestation that she had not been seen on July 22,

---

[6] The Court cannot find any place where Nurse Whittington testifies that she did, in fact, expressly permit Plaintiff to alter the excuse. She states that the altered date, July 22, is "correct," which she communicated to Patronas. (*See* Dep. Whittington, at 13, ECF No. 55-2). She agrees that she "approved" the change of date, but appears to mean that the alteration was correct, not that she approved Plaintiff altering the excuse herself. (*Id.* at 15). She later elaborates: "Well, I didn't tell her it was okay for her to change it. I think the way the conversation was, was, 'I need this date changed,' and I just said, 'Okay,' and it was kind of left open there.'" (*Id.* at 23). Thus, Plaintiff seems to misstate Nurse Whittington's testimony in an effort to show pretext.

11

rendered Patronas's decision to fire her reasonable. (*Id.* at 163). Finally, she agreed that she was fired for falsifying the excuse, not for her absence from work. (*Id.* at 164). The same is confirmed by Patronas both in his Declaration (*see* Decl. Patronas ¶ 5, ECF No. 52-11) and in his memorandum following the termination. (*See* Mem., ECF No. 52-17). After Plaintiff's termination and her following grievance, Nurse Whittington confirmed to Patronas that Plaintiff had altered the excuse (Dep. Whittington, at 11, ECF No. 55-2), which Plaintiff had "adamantly denied" throughout the investigation. (Pl.'s Aff. ¶ 57, ECF No. 55-1; *see also* Decl. Patronas ¶ 5, ECF No. 52-11).

Hence, whether Plaintiff was ultimately justified in her absence on the requested date(s) is irrelevant, because she was not fired for her mere absence from work. She was, in fact, fired for her employer's legitimate belief that she was dishonest, whether in manipulating the excuse or in subsequently denying that she did so. *See Rangel v. Omni Hotel Mgmt. Corp.*, No. SA-09-CV-811-OG, 2010 WL 3927744, at *3 (W.D. Tex. Oct. 4, 2010) (finding that a plaintiff failed to establish pretext where he confused an incident of misconduct with his "not [being] forthright during the post-incident investigation"); *see also Amezquita v. Beneficial Tex., Inc.*, 264 F. App'x 379, 386 (5th Cir. 2008) (holding that a plaintiff's dishonesty during a company investigation can constitute a legitimate nondiscriminatory reason for termination).

In summary, the whole of the evidence indicates that Plaintiff was

terminated for her manipulation of a medical excuse and dishonesty in her dialogue with Patronas. She has not presented any evidence that the medical excuse was not altered or that she was otherwise honest. Much less has she presented any evidence whatsoever that her mishandling of this incident was Patronas's pretext for lingering animus against Plaintiff arising out of her involvement in a sexual harassment investigation over a year beforehand.[7] *See McCoy*, 492 F.3d at 562 (dismissing a plaintiff's Title VII claims on summary judgment for failure to offer any evidence that her employer's nondiscriminatory reason was pretextual). There is thereby no indication in the record that Defendant's rationale was factually incorrect, much less illegitimate or pretextual. The Title VII claims must be dismissed with prejudice.

## III. Plaintiff's Tortious Interference with Employment Claims

Plaintiff predicates the inclusion of her tortious interference with employment claims on this Court's supplemental jurisdiction. (*See* Am. Compl. ¶ 5, ECF No. 13). "Under 28 U.S.C. § 1367(c)(3) this court has broad discretion to

---

[7] The Court notes that Plaintiff also has not presented any evidence of a retaliatory motive in Patronas, the Labor Relations representative for Plaintiff's department. It was Patronas who ultimately terminated Plaintiff. (Decl. Patronas ¶ 5, ECF No. 52-11; Dep. Ledet, at 158-59, 164, ECF No. 52-2; Pl.'s Aff. ¶ 58, ECF No. 55-1). The Court cannot find any indication in the record that Patronas harbored animus towards Plaintiff for her involvement in an earlier sexual harassment investigation, nor does Plaintiff explain why he would have singled her out. Plaintiff suggests that Jones harbored such an animus, but, even if she did, she was not involved in the decision to terminate Plaintiff. (*See* Decl. Patronas ¶ 6, ECF No. 52-11; Decl. Jones ¶¶ 9-10, ECF No. 52-3).

13

decline to exercise supplemental jurisdiction where it has dismissed all claims over which it had original jurisdiction." *Matherne v. Larpenter*, 54 F.Supp.2d 684, 688 (E.D. La. 1999). The Court, having dismissed Plaintiff's federal law claims in the early stages of this litigation, hereby declines to exercise supplemental jurisdiction over the remaining state law claims.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [52] Motion for Summary Judgment filed by Defendants, Huntington Ingalls Incorporated, Jenni Jones, individually, and John Patronas, individually, is hereby **GRANTED IN PART**. Plaintiff's Title VII retaliation claims are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED AND ADJUDGED** this the 26th day of May, 2022.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE